UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Gowry Rathnayake,<br><br>Plaintiff,<br><br>v.<br><br>Farmers Insurance Exchange,<br><br>Defendant. | Case No.: 2-13-cv-765-JAD-GWF<br><br>**Order Granting Defendant's Motion for Judgment on the Pleadings [Doc. 24]** |

Plaintiff Gowry Rathnayake is a Farmers-insured motorist who claims her insurer violated NRS 690B.031 by failing to give her a policy-premium discount for her car's supplemental safety features. Doc. 1 at 22. Based entirely on this alleged statutory violation, she sues individually and as representative of a putative class and asserts claims for (1) negligence per se for violations of NRS 690B.031, (2) breach of contract, (3) tortious breach of contract, (4) violation of Nevada's Deceptive Trade Practices Act, NRS 598.0293(3), (5) reformation, (6) unjust enrichment, and (7) declaratory relief. *Id.* at 25-30.

Farmers moves for judgment on the pleadings on all claims, arguing that since each of plaintiff's claims hinges on the ability to enforce a statute enforceable exclusively by Nevada's Insurance Commissioner, her remedies are purely administrative, and she lacks the right to bring a lawsuit for this alleged violation. Plaintiff argues that her claims are being mischaracterized: they sound in bad faith, and the Nevada Supreme Court recognized in *Allstate Insurance Company v. Thorpe*,[1] that Nevada's statutory insurance scheme "does not foreclose actions for tortious and contractual bad faith against first party insurers."

If it were plaintiff's intent—as now contended—to plead bad faith claims, she failed to include any in her complaint; all of her existing claims, regardless of their labels, seek private enforcement of NRS 690B.031—a responsibility vested exclusively in the Nevada Division of

---

[1] *Allstate Ins. Co. v. Thorpe*, 170 P.3d 989, 996 (2007).

Insurance (NDOI). As alleged, plaintiff's claims fail to state a cognizable claim for relief and must be dismissed. To the extent she can plead a viable bad faith claim arising from her insurer's conduct, she may seek leave to amend her complaint.

**Discussion**

**A.   Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[2] Motions for judgment on the pleadings are treated in the same manner as motions to dismiss for failure to state a claim under which relief can be granted under Rule 12(b)(6).[3] In both instances, the complaint's well-pled allegations are taken as true, and are subject to dismissal when they do not create a plausible claim of relief.[4]

**B.   Plaintiff's Complaint States No Viable Claim.**

All of plaintiff's claims are founded on a single factual theory: NRS 690B.031[5] requires

---

[2] Fed. R. Civ. Proc. 12(c).

[3] *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (citations omitted).

[4] *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[5] NRS 690B.031 reads:

> 1. A policy of insurance providing coverage arising out of the ownership, maintenance or use of a motor vehicle . . . and includes coverage for the payment of reasonable and necessary medical expenses or uninsured and underinsured motorists coverage, or both, must contain a provision for the reduction in the premium for such coverage if the motor vehicle:
>
> > (a) Is equipped with an air bag on the driver's side of the front seat or air bags on the driver's side and passenger's side of the front seat; and
> >
> > (b) Contains any other safety device, other than safety belts, which substantially enhances the safety of the occupants of the motor vehicle.
>
> 2. The reduction in premiums required by subsection 1 must be based upon the actuarial and loss experience data available to each insurer and must be approved by the Commissioner. The insurer may offer additional reductions in premiums pursuant to the requirements set forth in subsection 1 if they are approved by the Commissioner. Each reduction must be calculated based on the amount of the premium before any reduction in that premium is made pursuant to this section, and not on the amount of the premium once it has been reduced.

1  insurers in this state to provide a discount to policy holders who drive vehicles containing safety
2  features in addition to certain airbags and seat belts. Doc. 1 at 22. Farmers allegedly violated NRS
3  690B.031 by failing to give plaintiff and all similarly situated policy holders that required discount.
4        Defendant argues that plaintiff is seeking to assert a private right of action for Farmers'
5  alleged violation of NRS 690B.031, and under the dispositive precedent of *Thorpe*, no such right
6  exists; plaintiff's remedy for this alleged violation is an administrative one that must be sought from
7  the NDOI. Doc. 24. Plaintiff does not dispute that the NDOI is vested with the exclusive original
8  jurisdiction over claims for violation of NRS 690B.031. Instead she argues that Farmers is
9  mischaracterizing her claims; they are "grounded in bad faith," and *Thorpe* recognizes that Nevada's
10 insurance scheme does not preclude claims for tortious bad faith. Doc. 30 at 13. Thus, plaintiff does
11 not deny that no private right of action exists for the enforcement of NRS 690B.031; she contends
12 she is "asserting a claim against her insurer for breach of its fiduciary-like duties to treat her, as its
13 insured, in good faith by failing to include the required discounts in her policy," claims "rooted in
14 traditional contract and bad faith insurance laws" and that "are not subject to the exclusive
15 jurisdiction" of the NDOI. Doc. 30 at 3-4.
16       The crux of this dispute is whether plaintiff's claims fall outside the NDOI's exclusive
17 jurisdiction because they do not seek to enforce NRS 690B.031's discount provision and are, as
18 plaintiff contends, really just bad faith claims. In *Thorpe*, the Nevada Supreme Court noted in
19 general that "the Nevada Insurance Commissioner has express authority to enforce the provisions of
20 the Nevada Insurance Code," in any matter in which "a party seeks to ensure compliance" with the
21 same.[6] If a dispute falls within the Commissioner's jurisdiction, parties are required to bring their
22 disputes to the Commissioner in the first instance, and the courts retain a limited right of judicial
23 review of the Commissioner's ultimate decision under Nevada's Administrative Procedures Act.[7] If

---

3. The Commissioner shall review and approve or disapprove each policy of insurance that offers a reduction in the premiums provided for in this section. An insurer must receive the written approval of the Commissioner before delivering or issuing for delivery a policy that provides for such a reduction.

[6] *Id.* at 994 (quoting NRS Title 57) (brackets omitted).

[7] *Id.*

a party fails to first exhaust review before the Commissioner, the dispute is not ripe for judicial review.[8] But the *Thorpe* court carved out a limited category of claims not subject to this administrative exhaustion requirement: "actions for tortious and contractual bad faith against first-party insurers."[9] It is this language on which plaintiff now hangs her hat,[10] and she argues that her case is "essentially" a bad faith claim, because she and all similarly situated policy holders stand in a first-party relationship with Farmers, who owes them a fiduciary-like duty.

### *1.   Plaintiff has not alleged a bad faith claim.*

The central problem with plaintiff's argument, as tacitly conceded at oral argument, is that plaintiff has not pled a bad faith claim. Nevada first recognized a cause of action for an insurer's tortious breach of the implied covenant of good faith and fair dealing in *United States Fidelity & Guaranty Co. v. Peterson*.[11] Common law, "not the insurance contract, imposes this covenant on insurers," and "[a] violation of the covenant gives rise to a bad-faith tort claim."[12]

Nothing in plaintiff's complaint suggests that any stated claim is founded upon a bad faith theory. She has not alleged any fiduciary-like or special relationship, no implied covenant of good

---

[8] *Id.*

[9] *Id.* at 996.

[10] At the July 24, 2014, oral argument, this was the central focus of plaintiff's argument. In her brief, plaintiff also suggests that she should be permitted to maintain a claim under Nevada's Unfair and Deceptive Trade Practices Act, NRS 598 et seq. Doc. 30 at 14. But NRS 686A.015(1) gives "the Commissioner . . . exclusive jurisdiction in regulating the subject of trade practices in the business of insurance in this state," as the Nevada Supreme Court emphasized in the unpublished case of *Jafbros, Inc. v. American Family Mutual Ins. Co.*, 2012 WL 1142262, *2 (Nev. Apr. 2, 2012) ("Jafbros incorrectly pigeonholes all its claims as common law tort claims even though the complaints in both of these cases clearly include causes of action for unfair trade practices, an area committed to the Insurance Commissioner's exclusive jurisdiction."). To the extent that the vague dicta in footnote 2 of *Wingco v. Gov't Emps. Ins. Co.*, 321 P.3d 855 (Nev. 2014), suggests that *Thorpe*'s carve-out may be wider than just bad faith claims, I find that *Jafros* suggests that the Nevada Supreme Court would not extend *Thorpe*'s bad-faith carve-out to plaintiff's right to pursue an unfair trade practices claim for violation of NRS 690B.031. *See In re Kekauoha–Alisa*, 674 F.3d 1083, 1087–88 (9th Cir. 2012) (noting that where no binding precedent exists from the state's highest court, a federal court must predict how that court would decide the issue).

[11] *Peterson*, 540 P.2d 1070, 1071 (Nev. 1975).

[12] *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009).

faith and fair dealing in her contract, and no breach of that covenant.[13] *See generally* Doc. 1-1. Indeed, the phrase "bad faith" is nowhere to be found. If it was her intention to plead a bad faith case—as she now contends—she utterly failed to do so. All of the claims as they are currently phrased seek to enforce NRS 690B.031, which no party disputes is a job for the NDOI.[14] Accordingly, plaintiff's claims as pled fail to state a cognizable claim for relief and will be dismissed.

### *2.     Plaintiff Has Leave to Amend to Plead a Cognizable Bad Faith Claim.*

As plaintiff contends that her intention was to plead a bad faith case and it now appears that her goal of doing so was not achieved by this iteration of her complaint, I now consider whether she should have leave to file an amended complaint to plead that intended claim.[15] Rule 15 of the Federal Rules of Civil Procedure requires district courts to "freely give leave [to amend] when justice so requires."[16] The Ninth Circuit has long recognized that this policy is "to be applied with extreme liberality."[17] In the seminal leave-to-amend case of *Forman v. Davis*,[18] the United States

---

[13] Although plaintiff's third claim for relief is entitled "tortious breach of contract," that claim appears to be founded on an alleged breach of the express contractual terms, not on an implied covenant of good faith and fair dealing. *See* Doc. 1-1 at 14-15. Indeed, the main case theory appears to be founded upon the notion that all insurance laws, including NRS 690B.031, are incorporated into every insurance policy as a matter of law. *See* Doc. 30 ("Since insurance statutes/laws are incorporated into an insurance policy/contract, failure to comply with a particular insurance statute/law also constitutes, as a matter of law, a violation of the insurance policy/contract, which ultimately gives rise to the 'first party' contractual and tortious claims that are litigated daily in district courts across Nevada."); Doc. 1-1 at ¶ 32 (suggesting the same). This argument is based on the Nevada Supreme Court's statement in *Ippolito v. Liberty Mut. Ins. Co.*, 705 P.2d 134, 136 (1985), that Nevada law "impl[ies] into the policy's provisions the increased protection afforded by" the law requiring an insurer to offer uninsured and underinsured vehicle coverage in an amount equal to the limits of coverage for bodily injury. In *Wingco*, the Nevada Supreme Court characterized *Ippolito* as recognizing that the "court will read coverage mandated by statute into Nevada motor vehicle insurance policies." *Id.* at 857 n.3. *Ippolito*'s implication rule does not expressly apply to discounts mandated by statute and is founded on public policy concerns, *see Ippolito*, 705 P.2d at 136, and plaintiff has offered no compelling argument to extend *Ippolito* to premium discounts.

[14] This decision is in no way intended to foreclose plaintiff from seeking judicial review of the NDOI's resolution of these claims once she has exhausted the administrative-claims procedure.

[15] Although the request for leave was not briefed, it was made at oral argument.

[16] Fed. R. Civ. Proc. 15(a)(2); *Sonoma County Association of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013).

[17] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).

[18] 371 U.S. 178, 182 (1962).

Supreme Court explained, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the Plaintiff] ought to be afforded an opportunity to test his claim on the merits." Still, amendment is not automatic. If reasons justify denying opportunity to amend, the court has discretion to foreclose amendment.[19] In the Ninth Circuit, courts consider, *inter alia*, the futility of the amendment in determining whether leave to amend should be granted and may deny leave based on futility alone.[20]

Whether plaintiff can state a plausible bad faith claim based on true facts and Nevada law remains to be seen.[21] In light of her assertion that her intention was, in fact, to state a bad faith claim, and given the infancy of this case and this court's preference to decide cases on their merits, a motion for leave to amend should be considered before this case is dismissed in its entirety. Accordingly, if plaintiff believes that she can state a cognizable bad faith claim under Nevada law, she shall have 20 days to file a motion for leave to amend that fully complies with Local Rule 15-1(a). Plaintiff is cautioned that, because all claims alleged in her original complaint have been dismissed, her failure to file a motion for leave by the stated deadline will result in the dismissal of this case with prejudice and without further prior notice.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Judgment on the Pleadings [Doc. 24] is GRANTED, all of the claims stated in plaintiff's complaint are hereby dismissed;

It is FURTHER ORDERED that plaintiff has 20 days to file a motion for leave to amend to state a bad faith claim. Should plaintiff not file a motion for leave to amend by the deadline, this

. . .

---

[19] *See Forman*, 371 U.S. at 182.

[20] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *Chudacoff v. University Medical Center of So. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 737 (9th Cir. 2013).

[21] Plaintiff is reminded that bad faith claims must be founded upon recognized, fiduciary-like duties of insurers. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 319 (Nev. 2009) (noting that Nevada has recognized an insurer's duties to defend and indemnify).

1  action will be dismissed with prejudice without further prior notice.

2  DATED: August 11, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE